Argued May 11, affirmed June 27, 1962

# HALLINAN MACKIN LUMBER CO. *v.* ESQUIRE LUMBER COMPANY

372 P. 2d 781

*Boyd J. Long,* Portland, argued the cause for appellant. On the brief were Boyrie & Miller and F. Brock Miller, Portland.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were Koerner,

Young, McColloch & Dezendorf and Herbert H. Anderson, Portland.

Before McAllister, Chief Justice, and Warner, Perry and Sloan, Justices.

SLOAN, J.

This was an action for an alleged breach of warranty in the sale of lumber from defendant to plaintiff. Plaintiff alleged that the lumber was sold upon an agreement that the lumber would contain a maximum of 12 percent moisture. The case was tried to the court without a jury. The court found for plaintiff. Defendant appeals. The issue most seriously urged by defendant is the claim that the court admitted evidence which varied the terms of a written contract.

On July 21, 1959, plaintiff delivered to defendant its purchase order. The order sought the purchase of a substantial quantity of ponderosa pine. The quality of the lumber ordered specified, in part, that it was to be "DRY—[Western Pine Association] Rules" and "to be soft-textured, bright stock thoroughly dry and D.E.T. (No Stain)." The purchase order also contained this notation: "Agreement: Bob Rohan and Larry Owen."

On July 22 defendant delivered to plaintiff a document entitled "Order Acceptance." In respect to the issue in question the acceptance contained this statement: "Thoroughly AD Pond. Pine S2S Std # 3 Shop thru Factory Select & Btr." Defendant claims that the purchase order and acceptance created a written integrated contract which included all of the terms of the agreement for which defendant was to be held.

It is to be noted that neither of these documents contained the precise specification that the lumber was to contain a maximum of 12 percent moisture. It is also to be noted that the acceptance contained qualifications, other than those in issue, which materially differed from the terms suggested in the purchase order.

A part of the challenged evidence was the testimony of the two persons named in the purchase order, Bob Rohan and Larry Owen. At the time in question, Owen was the responsible officer of plaintiff in making the order and Rohan was his counterpart with defendant in accepting the order. Both were permitted to testify, over defendant's objection, to telephone conversations between the two in respect to the terms of this particular purchase. Both testified that in their conversations the matter of the 12 percent moisture content was discussed and recognized as what was intended by the term "thoroughly dry" in the purchase order and the term "thoroughly AD"—meaning air dried—in the acceptance.

The other challenged evidence was an exhibit offered by plaintiff and received in evidence over defendant's objections. The exhibit was a written document designated "Change Order." The document was dated July 24, 1959, and contains this handwritten statement.

"To read AD to 12% or less moisture content"
"Bob; Watch this moisture carefully as we discussed by phone that it is to be thoroughly dry 12% or less"
"Larry"

This document, or memorandum, was received by defendant before any of the lumber was shipped.

We think the court properly admitted the challenged evidence. In the first place, the order and acceptance did not form a complete written agreement between the parties. The material variation made by defendant in its acceptance prevents such a determination. Secondly, neither the testimony of the oral interchange nor the exhibit varied the terms of the contract. It was merely evidence to explain the meaning of terms used in the contract. *Hurst v. Lake & Co., Inc.*, 1933, 141 Or 306, 16 P2d 627, 89 ALR 1222. Although the challenged exhibit bore the printed name "Change Order" it was not a change in the original agreement of the two parties at all. It was a more precise specification. The subsequent conduct of defendant in attempting to perform the agreement and in recognizing that they were bound to provide lumber with less than 12 percent moisture content proves that such was the agreement.

> "Even in the case of a fully 'integrated' contract, the parties may use language the exact application of which they know to be uncertain and to which they are too indifferent at the time the contract is executed to try to make clear. This does not prevent the existence of a valid contract. It makes necessary the introduction of testimony as to the property, persons, and events to which the language is related; and it causes much greater weight to be put upon the subsequent practical interpretation and construction of the parties themselves." 1 Corbin, Contracts, 1950, § 101, p 321.

A second issue is based upon the amount of damages allowed. The evidence fully supports the court's determination of the damages. It was a question of fact and the court's determination is conclusive here. Judgment affirmed.